# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 50018 | **DATE** | 9/21/2011 |
| **CASE TITLE** | Experience Based Learning, Inc. v. Just Live, Inc. | | |

**DOCKET ENTRY TEXT:**

Defendant's motion for summary judgment [48] is granted in part and denied in part.

■ [ For further details see text below.]

Docketing to mail notices.

## STATEMENT

     This commercial dispute between plaintiff/counter-defendant Experience Based Learning, Inc. ("EBL") and defendant/counter-plaintiff Just Live, Inc. ("Just Live") revolves around two separate contracts. The first contract, which the parties refer to as the "Contract Agreement" and is dated August 23, 2003, required EBL to provide, among other things, consulting and training to Just Live with respect to a ropes challenge course that EBL built for Just Live in exchange for compensation equal to 5% of Just Live's annual gross revenue.[1] The second contract, which the parties refer to as the "Equipment Lease" and is dated August 23, 2005, provided that EBL would install and lease to Just Live all the equipment necessary for a zip-line "Tree Top Canopy Tour," which Just Live would operate and pay rent to EBL in the amount of 20% of the monthly gross revenues generated from the zip-line tour.

     Over time, the parties' business relationship soured because, among other things, a dispute arose over the level of maintenance and refurbishment that EBL was to provide for the Tree Top Canopy Tour pursuant to paragraph 7 of the Equipment Lease. On September 4, 2008, Just Live decided to terminate its business relationship with EBL and provided notice to EBL that it would cease operation of the Tree Top Canopy Tour after September 30, 2008.[2] In its letter, defendant asserted that "[t]he Equipment Lease is terminated by its own terms as of October 1, 2008." Defendant further stated that "[t]he Contract Agreement was likely never enforceable and certainly has been repudiated by EBL. So there is no doubt, any and all agreements or contracts between EBL and Just Live are hereby terminated."

     In the termination letter, Just Live directed that "EBL should make arrangements to take possession of its equipment no earlier than October 1, 2008 but no later than October 15, 2008. If EBL does not contact [defendant's attorney] in order to make such arrangements prior to October 1, 2008, Just Live will assume that EBL has abandoned its property and will dispose of it at its discretion."[3] EBL, through counsel, responded that "EBL has no intention of abandoning any of the property it has at Just Live's facility," but noted that "Steve Gustafson [EBL's principal] is not able to get out there to dismantle the course on such short notice. I would like to figure out a way with you for the clients to coordinate an agreed upon time." Just Live responded that it could not "leave your client's retrieval of its equipment open-ended" and reiterated that EBL would be given access to the property from between October 1 and October 15. Just Live also noted that, if EBL did not make

| STATEMENT |
|---|

arrangements to remove its equipment, then Just Live would remove the equipment and store it for 30 days following disassembly in order to allow a reasonable time for EBL to either salvage or dispose of the equipment. Alternatively, Just Live offered to bear the cost of disassembly and to ship the equipment to EBL at EBL's expense. Except for one email from EBL on December 5, 2008, indicating its desire to retrieve its equipment in January or February 2009, EBL never attempted to retrieve any of its equipment. In response to the December 5 email, Just Live stated that it had already dismantled the EBL built zip-line course and disposed of the equipment in accordance with its September communications.

On February 4, 2009, EBL filed a five-count complaint against Just Live premised on this court's diversity jurisdiction alleging (1) breach of the Contract Agreement; (2) breach of the Equipment Lease; (3) breach of the duty of good faith and fair dealing with respect to the Equipment Lease; (4) that it is entitled to an accounting from Just Live of its gross revenues received during the terms of the contracts; and (5) conversion of its zip-line equipment. On November 11, 2009, Just Live filed a counterclaim against EBL seeking (1) rescission of the Contract Agreement; and (2) rescission, damages, and attorney's fees with respect to the Equipment Lease.

Currently before the court is Just Live's motion for summary judgment on both EBL's complaint and on Just Live's counterclaims. Because the issues in each count are unique, the court will address the parties' arguments as to each count individually. As explained more fully below, the motion for summary judgment is granted in part and denied in part.

## I. COUNT I – BREACH OF CONTRACT AGREEMENT

In Count I of its complaint, EBL alleges that Just Live breached the Contract Agreement by (1) terminating the Contract Agreement without cause in violation of the terms of the contract; (2) failing to pay to EBL 5% of its gross revenues generated from professional team building and ropes course services from and after March 1, 2008; and (3) purchasing equipment and services from direct competitors of EBL in violation of the covenant not to compete set forth in the contract. In support of its motion for summary judgment, defendant argues that (1) the Contract Agreement is of an indefinite duration and therefore terminable at will; (2) EBL violated the covenant not to compete, thereby discharging Just Live from its duty to perform; and (3) EBL failed to fulfill its obligations to provide business support and training, thereby excusing any breach.

### A. Termination of the Contract Agreement

In the Contract Agreement, there are two references to the duration of the agreement. The first reference comes directly under the heading "Professional Services & Support," where it states: "Ongoing for the duration of Just Live, Inc. business identity." The second reference to the duration of the contract comes at the end of the section detailing Just Live's obligation to pay 5% of its gross revenue to EBL, where it states: "Compensation term will be for the business life cycle of Just Live, Inc. and/or the conclusion of professional team building and ropes course services by Just Live, Inc." According to defendant, these references show that the duration of the contract is indefinite, and therefore, that the contract is terminable at will.

Before addressing the merits of this argument, the court first notes that this argument was raised by defendant in its motion to dismiss the complaint, but it was rejected by the court at that time based on a finding that "the conclusion of professional team building and ropes course services is an objective event upon which the parties agree the contract would terminate." Now, plaintiff claims that the law of the case doctrine precludes the court from reconsidering this prior ruling. The court disagrees. In rejecting a similar argument, the Seventh Circuit has explained that "[t]he district court has the discretion to make a different determination of any matters that have not been taken to judgment or determined on appeal. Pre-judgment orders, such as motions to dismiss, are interlocutory and may be reconsidered at any time." Cameo Convalescent Ctr., Inc. v. Percy, 800 F.2d 108, 110 (7th Cir. 1986); see also Pickett v. Prince, 207 F.3d 402, 407 (7th Cir. 2000) (explaining that the law of the case doctrine is "highly flexible, especially when a judge is being asked to reconsider his own ruling"); Fed. R.

Civ. P. 54(b) ("[A]ny order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). Here, after reviewing the prior order and the arguments presented in the current briefing, the court is compelled to revisit the issue.

The general rule under Illinois law[4] is that "[c]ontracts of indefinite duration are terminable at the will of either party." Jespersen v. Minn. Mining & Mfg. Co., 183 Ill. 2d 290, 293 (1998). However, if "[a]n agreement without a fixed duration . . . provides that it is terminable only for cause or upon the occurrence of a specific event," then that contract is "terminable only upon the occurrence of the specified event and not at will." Id.; see also R.J.N. Corp. v. Connelly Food Prods., Inc., 175 Ill. App. 3d 655, 660 (1988) (holding that a contract is sufficiently definite in duration if it would terminate based on the occurrence of an "objective event"). Neither party challenges this court's previous conclusion that the reference to the "business life cycle" of Just Live is not an objective event that would make the Contract Agreement sufficiently definite in duration. See Ruca Hardware, Ltd. v. Ruca Chien, No. 94 C 3635, 1995 WL 307172, at *7 (N.D. Ill. May 17, 1995) (concluding that "contracts which are to remain in effect 'for as long as "x" corporation is in existence' are indefinite in duration and therefore terminable at will"). Thus, the issue is whether agreeing that the compensation term would last until "the conclusion of professional team building and ropes course services by Just Live, Inc." gave the Contract Agreement a definite duration.

After reviewing the cases cited by both parties, the court is persuaded that the contract agreement in R.J.N. Corp. provides the closest parallel to the instant case. In R.J.N. Corp., the court found that the clause "this agreement will remain in effect for as long as Connelly serves Rich's customers," was not an objective event and did not make the parties' contract sufficiently definite in duration. 175 Ill. App. 3d at 660 (emphasis removed). Instead, the court reasoned that

> a practical construction of the clause indicates an indefinite duration of the contract based upon CFP's apparent option/decision to not serve Rich's customers at some point in time. In other words, the contract would remain in effect only as long as CFP served Rich's customers and, therefore, when CFP would decide to no longer serve RJN's customers could not be ascertained, making the duration of the contract indefinite and terminable at will.

Id.; see also Yale Sec., Inc. v. Freedman Sales, Ltd., No. 96 C 6501, 1997 WL 51428, at *3 (N.D. Ill. Feb. 3, 1997) (discussing R.J.N. Corp. and explaining that "the occurrence of the event in question was apparently in Connelly's (one of the parties) complete control. It would thus have been reasonable for the court to conclude that, if one of the parties could institute a termination-triggering event, then the contract should be considered terminable at will."). Likewise, in this case, Just Live could have unilaterally terminated the contract by ceasing operation of the professional team building and ropes course services and instead focusing on its zip-line tour. Because Just Live had the power to terminate the contract in its discretion at any time, and because it could not be determined when it would exercise that discretion, the duration of the contract in this case is indefinite, and therefore, terminable at will. The cases cited by EBL do not change this conclusion, as those cases all involved either an employment contract or a contract that would terminate based on a specific, objective event, thus making those cases readily distinguishable.[5]

Because the Contract Agreement was terminable at will, Just Live cannot be held liable for breach of contract based on having terminated the agreement in its September 4, 2008 letter. Accordingly, a partial summary judgment in Just Live's favor on this particular allegation in Count I is appropriate. Likewise, summary judgment is appropriate on Just Live's first counterclaim seeking a declaration that the Contract Agreement is "rescinded, voided and unenforceable," as the agreement has already been validly terminated and Just Live no longer has an ongoing obligation to pay EBL 5% of its gross revenue.

### B. Failure to Perform under the Contract Agreement

The court's conclusion that the Contract Agreement is terminable at will does not mean that summary judgment in favor of Just Live on the entirety of Count I is appropriate, as Just Live could still be liable for any breach that occurred before termination of the agreement. See R.J.N. Corp., 175 Ill. App. 3d at 661-62 (finding that the trial court erred in failing to consider whether there was a breach of contract prior to the termination of the contract even though the contract was terminable at will). In its complaint and its response to the summary judgment motion, EBL argues that Just Live failed to pay the 5% compensation that was due based on revenue received after March 1, 2008. The evidence in the record reflects that, as of May 22, 2008, the 5% payments to be made under the Contract Agreement since January 1, 2008, were being held in escrow. The parties do not direct the court to any further evidence concerning these payments, including whether the money was ever taken out of escrow and paid to EBL, or when the final payment under the Contract Agreement was made. Accordingly, there remains a genuine issue of material fact concerning whether Just Live fulfilled its payment obligations under the Contract Agreement.

Rather than trying to show that it fully performed, Just Live instead argues that EBL breached the Contract Agreement in multiple ways, including violating the covenant not to compete by constructing zip-line courses for two competitors of Just Live on the same island, Princeville Ranch Adventures and Kauai Backcountry Adventures. EBL admits that it did construct zip-line courses for these companies, but it argues that they were not competitors of Just Live at the time of installation because Just Live did not yet have a zip-line tour. Based on the evidence in the record, the court cannot say as a matter of law whether EBL violated the covenant not to compete, as the restrictions imposed on the parties by the covenant are not clearly defined. The Contract Agreement says only that EBL and Just Live "agree not to compete or consort with any third party business which may be viewed as direct competition to the parties herein." Accordingly, there remain issues of fact for the jury to decide as to whether these other companies were "direct competition" to Just Live, whether Just Live may have consented to the business relationship by referring those companies to EBL, and ultimately whether EBL's conduct constituted a breach.[6]

Just Live also argues that EBL breached the Contract Agreement by failing to fully provide "[b]usiness consultation, marketing development consultation, website consultation . . . [and] technical training" as required by the contract. However, EBL counters, and Just Live agrees, that it stopped providing business and marketing consulting services in late 2006 or early 2007 because Just Live perceived that the consulting was no longer helpful and discontinued seeking the advice and consult of EBL. Because the court cannot tell from the record precisely what consulting services were provided, when those services stopped being provided, and when (if ever) Just Live requested additional performance under the Contract Agreement, the court is unable to grant summary judgment to Just Live based on this defense.

In sum, genuine issues of material fact remain in dispute concerning whether EBL breached the Contract Agreement so as to excuse Just Live's failure to pay the compensation due under the contract and its consorting with a third-party competitor of EBL. Thus, summary judgment on Count I is denied, in part, and Count I remains pending.

### II. COUNT II – BREACH OF EQUIPMENT LEASE

In Count II, EBL alleges that Just Live breached the Equipment Lease by (1) terminating the Equipment Lease and still continuing to operate the Tree Top Canopy Tour; (2) failing to pay in full 20% of the gross revenues generated from the zip-line tour since October 2005 and to provide EBL with sufficient financial statements and reservation books to determine the correct amount due; and (3) removing EBL's equipment without the express written consent of EBL.

Not surprisingly, Just Live has a different view of what happened. According to Just Live, in both its motion for summary judgment and its counterclaim, it validly terminated the Equipment Lease in accordance

with its terms on October 1, 2008, and was not in breach of the agreement at any time. In addition, Just Live argues that EBL breached the agreement by failing to properly refurbish and repair the equipment on the zip-line tour as needed, by failing to provide the requisite "soft gear" that was necessary for operation of the course, and by failing to provide training.

### A. Termination of the Equipment Lease

Paragraph 2 of the Equipment Lease provides:

> The term of this Lease shall be for a period so long as Just Live operates the Tree Top Canopy Tour, which shall be for a minimum of three (3) years from the date of the execution of this Lease, or until this Lease is terminated by EBL in accordance with Paragraph 13 herein below.

Because the agreement was executed on August 23, 2005, Just Live was obligated to operate the Tree Top Canopy Tour until at least August 23, 2008. Thus, there can be no dispute that Just Live's decision to terminate the Equipment Lease by ceasing to operate the Tree Top Canopy Tour after September 30, 2008, was in full compliance with the express terms of the contract.[7]

Because the termination was proper, EBL is left to argue that Just Live is continuing to operate the Tree Top Canopy Tour, and thus, the Equipment Lease is still in effect. The court disagrees. The undisputed evidence shows that Just Live removed EBL's equipment following the conclusion of the Equipment Lease, and that another company installed a new zip-line course on Just Live's property. EBL argues that, pursuant to paragraph 5 of the Equipment Agreement, "the replacement equipment becomes property of EBL and a part of the Equipment leased by EBL under the Equipment Lease." However, paragraph 5 simply does not support EBL's far-reaching claim that it has a property right to any zip-line course ever built for Just Live. The relevant portion of paragraph 5 reads: "All Equipment, attachments, accessories, and repairs at any time made to or placed upon the Equipment, or any replacement thereof, shall become part of the Equipment leased hereunder and become property of EBL." Under the plain language of this paragraph, the critical phrase "or any replacement thereof," only modifies the previous word, "Equipment." In other words, it specifies that attachments, accessories, and repairs that are made to or placed upon the original equipment or to any equipment that has been replaced under the terms of the Equipment Lease (see paragraph 7 requiring EBL to "remodel and renew the Equipment, as required") also becomes property of EBL. Paragraph 5 does not stand for the proposition that a completely new zip-line course built for Just Live would automatically become the property of EBL.

As a final note, EBL argues that allowing Just Live to terminate the contract would "frustrate the bargain reached by the parties," and that "Just Live could have bargained for a sunset term releasing it from its obligation after a period of years" but that it did not do so. On the contrary, the three-year minimum term obligation contained in paragraph 2 does operate like a sunset term while simultaneously protecting EBL's up-front construction costs. Moreover, EBL had additional protection in the Equipment Lease based on a "Minimum Patronage" term, which required Just Live to have at least 2,000 paying customers on an annual basis with a minimum fee charged of $75 per customer. This provision guaranteed a minimum return to EBL of $90,000 from Just Live's operation of the Tree Top Canopy Tour, which is only somewhat less than the "retail" price EBL would have charged Just Live for construction of the zip-line tour. As it turns out, EBL got much more than this minimum return out of the deal, as its 20% cut of the gross revenue amounted to over $400,000 during the life of the Equipment Lease. Although EBL may be disappointed that it can no longer benefit from such a lucrative operation, the court cannot say that Just Live's proper termination of the Equipment Lease frustrated the bargain reached by the parties.

Based on the foregoing, the court finds that Just Live is entitled to summary judgment, in part, on Count II of the complaint and Count II of its counterclaim, with respect to the termination of the Equipment Lease. Any claims that Just Live's notice of termination was a breach or that there is an ongoing contractual duty to pay 20% of the gross revenues from the newly constructed zip-line tours are without merit.

### B. Failure to Pay

As to EBL's claim that Just Live failed to fully pay 20% of its gross revenues generated from the Tree Top Canopy Tour, this issue appears to have been rendered moot by the information exchanged during discovery, and EBL has not pointed to any evidence showing a specific dollar amount of any alleged deficiency. As to the claim that Just Live did not provide sufficient financial statements and reservation books to verify the payments, the only evidence cited by EBL refers to a request for a profit and loss statement or tax information for either 2007 or 2008 that Gustafson wanted for purposes of a potential sale of EBL to a third party.[8] However, this type of financial document was not required to be disclosed under the Equipment Lease; Just Live was only required to provide "financial statements and reservation books which will identify, at a minimum, a daily accounting" of the zip-line customers. Because there is insufficient evidence to establish a breach of contract by a failure to pay the 20% due or provide the accompanying financial statements, summary judgment in favor of Just Live is also appropriate on this issue.

### C. Other Breaches

Resolution of the remaining allegations of breach by both parties will require the jury to determine factual disputes, and therefore, these issues are not amenable to summary judgment. This includes the parties' dispute over whether Just Live's removal of EBL's equipment was in violation of paragraph 5 of the Equipment Lease, or whether EBL abandoned its property by not acting to retrieve it in a timely fashion. Also for the jury to decide will be whether EBL's failure to repair or replace certain portions of the course equipment that Just Live thought were needed was a violation of the Equipment Lease, even though the contract states that "the extent of the remodeling as well as the time and frequency of the remodeling will be at EBL's sole discretion." Finally, the jury will have to decide whether EBL breached the Equipment Lease by failing to provide the necessary "soft gear" for the course, or by failing to provide training, as the facts on these issues are in dispute. Accordingly, Just Live's motion for summary judgment is denied, in part, as to these remaining issues raised by Count II of both the complaint and the counterclaim.

### III. COUNT III – DUTY OF GOOD FAITH AND FAIR DEALING

In Count III of its complaint, EBL alleges that Just Live breached the implied duty of good faith and fair dealing by continuing to offer a zip-line tour "that was identical or substantially identical" to the EBL-constructed Tree Top Canopy Tour after notifying EBL that it was going to discontinue the Tree Top Canopy Tour. "[T]he duty of good faith and fair dealing is implied in every contract," and "[i]ts purpose is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract." Gore v. Ind. Ins. Co., 376 Ill. App. 3d 282, 286 (2007).

As discussed above, Just Live did not breach any explicit provisions of the Equipment Lease when it decided to terminate the contract on October 1, 2008, and there is nothing in the contract that prohibits Just Live from continuing to offer a zip-line course on its property, even one that had a similar layout and design as the EBL-constructed Tree Top Canopy Tour. Nevertheless, the court finds that there are questions of fact as to whether Just Live exercised its discretion to terminate the Equipment Lease in good faith. For instance, the evidence reflects that Just Live did not inform EBL that it was planning on constructing another zip-line tour or that it had already been in contact with another vendor prior to termination of the Equipment Lease. Moreover, although Just Live clearly was not satisfied with EBL's decision not to refurbish the zip-line course, it appears that part of the problem may have been that Just Live did not adequately communicate with EBL concerning the status of its lease for the land on which the course was built, and a jury could find that it was not unreasonable for EBL to require some sort of confirmation that the zip-line course would be able to continue before it spent additional money on updating the course, even though that was not explicitly contemplated in the contract. For these reasons, Just Live's motion for summary judgment on Count III is denied.

## STATEMENT

### IV. COUNT IV – ACCOUNTING

In Count IV, EBL alleged that Just Live had understated its gross income during the terms of the Contract Agreement and Equipment Lease, and it sought a complete accounting from Just Live of these amounts. As noted above, this request appears to be moot as EBL admits in its response to the motion for summary judgment that "during the course of this litigation EBL has been provided access to what was represented by Just Live to be all of its business records pertinent to the time period of August of 2003 through September of 2008." Because there has been no evidence presented to the court to show that there is still a need for an accounting, Just Live's motion for summary judgment on Count IV is granted.[9]

### V. COUNT V – CONVERSION

In Count V, EBL alleges that Just Live has wrongfully converted the equipment that was used to construct the Tree Top Canopy Tour. In order to prove a claim for conversion, a plaintiff must show that "(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." Loman v. Freeman, 229 Ill. 2d 104, 127 (2008). Here, Just Live argues that EBL cannot establish a claim for conversion because it abandoned its property when it failed to retrieve it following the termination of the Equipment Lease. As set forth above, whether the equipment was properly removed by Just Live raises genuine issues of material fact. Therefore, summary judgment is denied as to Count V.

### VI. CONCLUSION

Based on the foregoing, defendant's motion for summary judgment is granted in part and denied in part.

---

1. Just Live also signed a promissory note requiring fixed monthly payments to EBL to pay for the construction of the ropes course. There is no dispute regarding the promissory note.

2. In October 2008, Just Live began construction of a new, longer zip-line course that was built by a different company, Experiential Resources, Inc. The newly constructed course is currently in operation.

3. The Equipment Lease expressly provided that, "[o]nce installed, Just Live shall not remove, nor permit the removal of, the Equipment or any part thereof from the Premises without EBL's prior written consent." However, the Equipment Lease was silent regarding the process or timetable for removal of the equipment after the lease was terminated.

4. The parties do not dispute that Illinois law applies in this case.

5. Moreover, now that the court has a fuller understanding of the facts of this case, the court's policy concern that "plaintiff could have provided construction of the ropes course as well as marketing consultation, and technical training to defendant, only to have defendant terminate the contract and enjoy the benefits of those services without having to pay any percentage of the profits gained by plaintiff's efforts" is not a valid basis to interpret the contract as having a definite duration because the construction of the ropes course was already paid for with a promissory note. In other words, the 5% payment was not for past services rendered, but rather was payment for ongoing marketing and training. As soon as either side terminated the Contract Agreement, both parties' obligations

would end at the same time.

6. The evidence in the record shows that Just Live violated the covenant not to compete by purchasing equipment and services from a direct competitor of EBL. Specifically, one of Just Live's principals, Julianne Lester, admits in her deposition that Just Live hired a competitor of EBL in July 2008 to upgrade its ropes challenge course by installing a rappelling station and a giant swing. Once again, rather than challenging the breach, Just Live contends that its breach should be excused based on EBL's prior breach of the Contract Agreement.

7. Although it does not appear to make such an argument, to the extent EBL is claiming that the Equipment Lease was to continue on indefinitely unless and until EBL provided notice of termination in accordance with the default provisions of paragraph 13, that interpretation would render the Equipment Lease terminable at will for the same reasons discussed above with respect to the Contract Agreement.

8. Plaintiff also cites to exhibit 9 of Gustafson's declaration, but that exhibit does not appear to be attached to the declaration that was filed with the court.

9. EBL notes in its response brief that it may still be entitled to attorney's fees and expenses. That may ultimately prove true if EBL can prove the merits of its other claims, but the court concludes that there is no basis for such an award under Count IV.